IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LEGACY MEDICAL CONSULTANTS, LP, SUCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. _____ |
| AMIR LEBASCHI D/B/A ORANGE COUNTY FOOT & ANKLE INSTITUTE, | § § § § | |
| *Defendant.* | § | |

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

COMES NOW Defendant Amir Lebaschi d/b/a Orange County Foot & Ankle Institute ("Lebaschi") and files this his motion to dismiss the above-captioned matter for lack of personal jurisdiction ("Motion"). In support of this Motion, Lebaschi respectfully shows the Court as follows:

I.

BACKGROUND

Lebaschi resides in California and intends to remain there. *See* Ex. 1 (Lebaschi Decl.) at ¶ 2. He does not reside in Texas and does not intend to do so in the future. *See id.* at ¶ 3. He does not routinely travel to Texas. *See id.* He does not own real property or personal property located in Texas. *See id.* He does not transact business in Texas. *See id.*

According to Plaintiff Legacy Medical Consultants, LP, successor in interest to Legacy Medical Consultants, LLC ("LMC"), Lebaschi entered into a contract to purchase goods from LMC but failed to pay LMC after LMC delivered the goods. *See* ECF 1-5 (Orig. Pet.) at ¶ 13. The alleged contract does not contemplate performance in Texas. *See generally* ECF 1-6. Lebaschi

communicated with representatives of LMC only via phone and email, during which he was in California. *See* Ex. 1 at ¶ 5. Neither Lebaschi nor anyone working on his behalf ever traveled to Texas to negotiate a contract with LMC, to sign a contract with LMC, to pick up goods from LMC, or to deliver payment to LMC. *See id.* Any goods Lebaschi obtained from LMC were shipped to him in California. *See id.*; *see also* ECF 1-6 ¶ 3 (contract states LMC will ship goods to Lebaschi).

Despite Lebaschi's lack of meaningful contacts with Texas, LMC sued Lebaschi in a Texas state court. *See* ECF 1-5. Lebaschi removed the case to this Court. *See* ECF 1.

### III.

### LEGAL STANDARDS

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The Fourteenth Amendment's Due Process Clause limits the power to exercise personal jurisdiction to cases when the defendant has such "'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'"[1] *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *International Shoe. Co. v. Washington*, 326 U.S. 310, 316–17 (1945) (internal quotation marks omitted)). This analysis, which focuses on the nature and extent of the defendant's relationship to the forum, recognizes two forms of personal jurisdiction: general or specific. *Id.*

---

[1] Because the Texas long-arm statute extends to the limits of federal due process, the two-step process of analyzing both the long-arm statute and Fourteenth Amendment due process "collapses into one federal due process analysis." *See Bulkley & Assocs., L.L.C. v. Dep't of Indus. Relations*, 1 F.4th 346, 351 (5th Cir. 2021); *see also* TEX. CIV. PRAC. & REM. CODE § 17.042 (long-arm statute).

General jurisdiction exists "only when a defendant is 'essentially at home' in the State." *Id.* "[A]n individual is subject to general jurisdiction in her place of domicile." *Id.* at 358-59.

Specific jurisdiction, on the other hand, only exists where the defendant took "some act by which [he] purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State." *Id.* at 359. "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Id.* Further, the plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum State. *Id*. "Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id*. at 259-60 (internal quotation marks omitted). "A minimum-contacts analysis involves more than counting the nonresident's contacts with the forum." *Stuart v. Spademan*, 772 F.2d 1185, 1189–90 (5th Cir. 1985). "The defendant's conduct and connection with the forum state must be such that [he] should reasonably anticipate being haled into court in the forum state." *Id.* at 1190. "The unilateral activity of those who claim some relationship with a nonresident defendant, however, cannot satisfy the requirement of contact with the forum state." *Id.*

## IV.

## ARGUMENT & AUTHORITIES

Pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court should dismiss the above-captioned matter because LMC cannot carry its burden to show that Lebaschi is subject to personal jurisdiction in Texas.

### A. General Jurisdiction Does Not Exist.

Lebaschi is not subject to general jurisdiction in Texas. For an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). "Domicile requires the demonstration of two factors: residence and the intention to remain." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011) (per curiam). Lebaschi's domicile is in the State of California, where he resides and intends to remain. *See* Ex. 1 at ¶ 2.

In its live pleading, LMC contends that Lebaschi was doing business as Orange County Foot & Ankle Institute. *See* ECF No. 1-5 at ¶ 5. "Orange County Foot & Ankle" is a tradename, not a legal entity. *See* Ex. 1 at ¶ 4. The rules governing general jurisdiction over entities do not apply to Lebaschi.

Although theoretically general jurisdiction can sometimes exists over nonresident defendants when their "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State," *Goodyear Dunlop*, 564 U.S.at 919, such is not the case here. Lebaschi lacks such continuous and systematic affiliations with Texas, and LMC cannot carry its burden to show otherwise. *See* Ex. 1 at ¶ 3 (Lebaschi does not reside in, routinely travel to, own property in, or transact business in Texas).

B.  **Specific Jurisdiction Does Not Exist.**

Lebaschi is also not subject to specific jurisdiction in this case. As explained above, specific jurisdiction only exists where the defendant took "some act by which [he] purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State" and the plaintiff's claims arise from such contacts by the defendant. *Ford Motor Co.*, 592 U.S. at 359. Lebaschi did not engage in any activities within the State of Texas relating to the subject matter of this case. *See* Ex. 1 at ¶ 5. Instead, at most, Lebaschi has only the following *de minimis* contacts with Texas:

(1) Lebaschi signed a contract to purchase goods from Texas-resident LMC, requiring payments be sent to LMC;

(2) Lebaschi communicated from California with LMC representatives, who might have been located in Texas; and

(3) the contract at issue contains a choice of law provision (not a forum selection clause) providing for the application of Texas law, *see* ECF 1-6 at 2 ¶ 7.

Such contacts are insufficient to show Lebaschi purposefully availed himself of the privilege of conducting activities in Texas and that he should be subject to specific jurisdiction in Texas. As the Fifth Circuit "has repeatedly held":

> …the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.

*Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004); *see also Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (no specific jurisdiction where "(1) [defendant] entered into a contract with [plaintiff], a Texas corporation; (2) [defendant] sent a final revised joint operating agreement from Oklahoma to Texas; (3) [defendant] sent three checks from Oklahoma to Texas in partial performance of its contractual obligations; and (4) [defendant] engaged in extensive telephonic and written communication with [plaintiff]").

Instead, the only meaningful contacts with Texas belong to LMC. LMC's "unilateral activity" cannot be the basis for personal jurisdiction over Lebaschi. *See Stuart*, 772 F.2d at 1190.

### i.     Lebaschi's Contracting to Buy Goods from a Texas Resident Does Not Subject Him to Specific Jurisdiction.

Lebaschi did not become subject to specific jurisdiction by merely contracting with a Texas resident who went on to carry out its contractual obligations in Texas. *See id.; Moncrief Oil Int'l*

*Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *Freudensprung*, 379 F.3d at 344; *Holt Oil & Gas Corp.*, 801 F.2d at 778.

To that end, "a purchaser who selects an out-of-state seller's goods or services based on their economic merit does not thereby purposefully avail itself of the seller's state law, and does not merely by purchasing from the seller submit to the laws of the jurisdiction in which the seller is located or from which it ships merchandise." *Health Commc'ns, Inc. v. Mariner Corp.*, 860 F.2d 460, 465 (D.C. Cir. 1988); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) ("It is clearly established that "merely contracting with a resident of the forum state does not establish minimum contacts."); *TXU Energy Retail Co., LP v. Emanuel Med. Ctr., Inc.*, No. CIV.A. 3:02-CV-2400-, 2003 WL 21281651, at *4 (N.D. Tex. May 28, 2003) (Ramirez, J.) ("It is difficult to find that a nonresident defendant has 'reached out' to a resident plaintiff where the nonresident defendant is a buyer, rather than a seller of the resident plaintiff's products."); *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) ("Merely entering into a contract with a forum resident does not provide the requisite contacts between a nonresident defendant and the forum state. <u>This is particularly true when the nonresident defendant is a buyer</u>, rather than a seller.") (brackets omitted, emphasis added).

As the Fifth Circuit has explained:

> …merely contracting with a resident of Texas is not enough to establish minimum contacts. Moreover, a plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas.

*Moncrief Oil Int'l*, 481 F.3d at 312. As discussed in *Moncrief Oil*, Lebaschi merely (allegedly) "contract[ed] with a resident of Texas;" he "did not perform any of [his] obligations in Texas," and "the contract did not require performance in Texas." *Id.*

Although the contract purportedly required Lebaschi to send payments to LMC—presumably from California to Texas—the gravamen of LMC's complaint is that Lebaschi did not make those payments (and therefore lacks such contacts). Even if Lebaschi sent payments from California to Texas, the Fifth Circuit does not "weigh heavily" the transmission of payments "into the forum state in exchange for the goods." *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983); *see also Jones v. Artists Rts. Enf't Corp.*, 789 F. App'x 423, 426 (5th Cir. 2019) ("The payments were sent to Louisiana only because Johnson resided there, which fails to establish purposeful minimum contacts."); *Freudensprung*, 379 F.3d at 344 (Fifth Circuit "has repeatedly held" that "mailing payments to the forum state" is "insufficient to establish" specific jurisdiction). After all, such contact is premised on the coincidental location of the seller, not on the buyer's purposeful availment of Texas law.

  **ii. Lebaschi's Communications with a Texas Resident Do Not Subject Him to Specific Jurisdiction.**

Lebaschi did not become subject to specific jurisdiction in Texas merely because he communicated, from outside of Texas, with LMC representatives who might have been in Texas. The Fifth Circuit has "held that communications relating to the performance of a contract themselves are insufficient to establish minimum contacts." *McFadin*, 587 F.3d at 760; *see also Freudensprung*, 379 F.3d at 344.

  **iii. The Contract's Choice of Law Provision Does Not Subject Lebaschi to Specific Jurisdiction.**

Although a court may consider the existence of a "choice-of-law provision" when deciding whether a defendant purposefully availed himself of a forum, "such a provision standing alone

would be insufficient to confer jurisdiction." *Burger King*, 471 U.S. at 482. Indeed, the Court has determined that "a governing law clause [in favor of Texas law] standing alone is insufficient to confer jurisdiction," where the nonresident defendant merely "contracted with Texas residents and engaged in communications" with them. *Watkins v. Gateway First Bank*, No. 3:20-CV-2136-L-BH, 2021 WL 1725534, at *5 (N.D. Tex. Mar. 15, 2021) (Ramirez, J.), *report and recommendation adopted,* No. 3:20-CV-2136-L-BH, 2021 WL 1720255 (N.D. Tex. Apr. 30, 2021) (Lindsay, J.).

The case at bar is similar to *Stuart v. Spademan*, in which the nonresident defendant "entered into a contract with Texas residents"; "shipped [goods] to the plaintiffs in Texas for modification"; "exchanged letters and telephone calls" with the plaintiffs; "mail[ed] … payments to the plaintiffs in Texas"; and entered an agreement which "included a choice-of-law provision that anticipated the application of Texas law." 772 F.2d 1185, 1192, 1194 (5th Cir. 1985). The Fifth Circuit held that the choice of law clause was "certainly insufficient of itself to justify jurisdiction over [the defendant]." *Id.* at 1196. The Court continued, "[n]or is it sufficient, when added to the other alleged contacts, to alter our holding that an inference of purposeful availment is not supported by the totality of the purported contracts between [the defendant] and Texas." *Id.* at 1196. In fact, Lebaschi has even less contact with Texas than the defendant in *Stuart*, because Lebaschi did not ship goods to Texas for modification.

**C. Lebaschi Has Not Waived the Personal Jurisdiction Requirement.**

Lebaschi did not waive his right to challenge personal jurisdiction by removing this case from state court. "Courts have consistently held . . . that, removal, in itself, does not constitute a waiver of any right to object to lack of personal jurisdiction." *Thompson v. Cartlidge*, 158 F.3d 583 (5th Cir. 1998) (per curiam) (quotations and brackets omitted) (citing *Nationwide Engineering & Control Systems, Inc. v. Thomas,* 837 F.2d 345, 347-48 (8th Cir.1988)); *see also Morris & Co.*

*v. Skandinavia Ins. Co.*, 279 U.S. 405, 409 (1929) ("Petitioner suggests that, by removal of the case to the federal court, objection to jurisdiction over the person of respondent was waived. Our decisions are to the contrary."); *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020) ("Removal does not cure jurisdictional defects, so defendants can still challenge jurisdiction after removal."); *Ayati-Ghaffari v. Dimon*, No. 419CV00533ALMCAN, 2020 WL 2478541, at *4 (E.D. Tex. Jan. 13, 2020), *report and recommendation adopted,* No. 4:19-CV-533, 2020 WL 1074301 (E.D. Tex. Mar. 6, 2020) ("Defendant Dimon has not waived his objection to personal jurisdiction merely by filing a Notice of Removal.").

This rule is now hornbook law: "A party who removes an action from a state to a federal court does not thereby waive any of his or her Federal Rule 12(b) defenses or objections." § 1395 Waiver of Certain Defenses—Removed Actions, 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, Fed. Prac. & Proc. Civ. § 1395 (3d ed. 2025).

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Lebaschi prays that the Court grant this Motion and, pursuant to Federal Rule of Civil Procedure 12(b)(2), dismiss all causes of action asserted against Lebaschi for lack of personal jurisdiction.

Respectfully submitted,

*/s/ Jordan M. Parker*
Jordan M. Parker
State Bar No. 15491400
jparker@canteyhanger.com
Derek Carson
State Bar No. 24085240
dcarson@canteyhanger.com
Michael Ackerman
State Bar No. 24120454
mackerman@canteyhanger.com

CANTEY HANGER LLP
Cantey Hanger Plaza
600 West 6th Street, Suite 300
Fort Worth, Texas 76102
(817) 877-2800  Telephone
(817) 877-2807  Facsimile

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I certify that on August 28, 2025, a true and correct copy of the foregoing was served on counsel for all parties via CM/ECF filing and via email.

*/s/ Michael Ackerman*
Michael Ackerman