IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LEGACY MEDICAL CONSULTANTS, LP, SUCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC | § § § § | |
| v. | § § | Civil Action No. 4:25-cv-00940-P |
| AMIR LEBASCHI D/B/A ORANGE COUNTY FOOT & ANKLE INSTITUTE, | § § § | |

**DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT AND BRIEF IN SUPPORT**

Defendant Amir Lebaschi d/b/a Orange County Foot & Ankle Institute ("Lebaschi") moves the Court to dismiss Plaintiff's Amended Complaint (ECF Doc. 10) for lack of personal jurisdiction ("Motion"). In support of this Motion, Lebaschi respectfully shows the Court as follows:

**I.   BACKGROUND**

Lebaschi resides in California and intends to remain there. *See* Ex. 1 (Lebaschi Decl.) at ¶ 2. He does not reside in Texas and does not intend to do so in the future. *See id.* at ¶ 3. He does not routinely travel to Texas. *See id.* He does not own real property or personal property located in Texas. *See id.* He does not transact business in Texas. *See id.*

According to Plaintiff Legacy Medical Consultants, LP, successor in interest to Legacy Medical Consultants, LLC ("LMC"), Lebaschi entered into a contract to purchase goods from LMC but failed to pay LMC after LMC delivered the goods. *See* ECF Doc. 10 at ¶ 25. The alleged contract does not contemplate performance in Texas. *See generally* ECF Doc. 10-1. Lebaschi communicated with representatives of LMC only via phone and email, during which he was in California. *See* Ex. 1 at ¶ 5. Neither Lebaschi nor anyone working on his behalf ever traveled to Texas to negotiate a contract with LMC, to sign a contract with LMC, to pick up goods from LMC,

or to deliver payment to LMC. *See id.* Any goods Lebaschi obtained from LMC were shipped to him in California. *See id.*; *see also* ECF Doc. 10-1 ¶ 3 (contract states LMC will ship goods to Lebaschi).

Despite Lebaschi's lack of meaningful contacts with Texas, LMC sued Lebaschi in a Texas state court. *See* ECF Doc. 1-5. Lebaschi removed the case to this Court. *See* ECF Doc. 1.

## II.  LEGAL STANDARDS

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The Fourteenth Amendment's Due Process Clause limits the power to exercise personal jurisdiction to cases when the defendant has such "'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'"[1] *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *International Shoe. Co. v. Washington*, 326 U.S. 310, 316–17 (1945) (internal quotation marks omitted)). This analysis, which focuses on the nature and extent of the defendant's relationship to the forum, recognizes two forms of personal jurisdiction: general or specific. *Id.*

General jurisdiction exists "only when a defendant is 'essentially at home' in the State." *Id.* "[A]n individual is subject to general jurisdiction in her place of domicile." *Id.* at 358-59.

Specific jurisdiction, on the other hand, only exists where the defendant took "some act by which [he] purposefully avail[ed] [him]self of the privilege of conducting activities within the

---

[1] Because the Texas long-arm statute extends to the limits of federal due process, the two-step process of analyzing both the long-arm statute and Fourteenth Amendment due process "collapses into one federal due process analysis." *See Bulkley & Assocs., L.L.C. v. Dep't of Indus. Relations*, 1 F.4th 346, 351 (5th Cir. 2021); *see also* TEX. CIV. PRAC. & REM. CODE § 17.042 (long-arm statute).

forum State." *Id.* at 359. "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Id.* Further, the plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum State. *Id*. "Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* at 259-60 (internal quotation marks omitted). "A minimum-contacts analysis involves more than counting the nonresident's contacts with the forum." *Stuart v. Spademan*, 772 F.2d 1185, 1189–90 (5th Cir. 1985). "The defendant's conduct and connection with the forum state must be such that [he] should reasonably anticipate being haled into court in the forum state." *Id.* at 1190. "The unilateral activity of those who claim some relationship with a nonresident defendant, however, cannot satisfy the requirement of contact with the forum state." *Id.*

### III.   ARGUMENT & AUTHORITIES

**A. General Jurisdiction Does Not Exist.**

Lebaschi is not subject to general jurisdiction in Texas. For an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). "Domicile requires the demonstration of two factors: residence and the intention to remain." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011) (per curiam). Lebaschi's domicile is in the State of California, where he resides and intends to remain. *See* Ex. 1 at ¶ 2; *see also* ECF Doc. 10 at ¶ 3.

LMC contends Lebaschi was doing business as Orange County Foot & Ankle Institute. *See* ECF Doc. 10-1 at ¶ 3. "Orange County Foot & Ankle Institute" is a tradename, not a legal entity. *See* Ex. 10 at ¶ 3. The rules governing general jurisdiction over entities do not apply to Lebaschi.

Although theoretically general jurisdiction can sometimes exist over nonresident defendants when their "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State," *Goodyear Dunlop*, 564 U.S. at 919, such is not the case here. Lebaschi lacks such continuous and systematic affiliations with Texas, and LMC cannot carry its burden to show otherwise. *See* Ex. 1 at ¶ 3 (Lebaschi does not reside in, travel to, own property in, or transact business in Texas); *see also* ECF Doc. 10 at ¶ 3 (Lebaschi's principal residence and Orange County Foot & Ankle Institute's principal address are both in California).

### B. Specific Jurisdiction Does Not Exist.

Lebaschi is also not subject to specific jurisdiction in this case. As explained above, specific jurisdiction only exists where the defendant took "some act by which [he] purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State" and the plaintiff's claims arise from such contacts by the defendant. *Ford Motor Co.*, 592 U.S. at 359. Contrary to LMC's allegations, Lebaschi did not engage in any activities within the State of Texas relating to the subject matter of this case. *See* Ex. 1 at ¶ 5. LMC dedicates Paragraphs 9 through 13 of its Amended Complaint to alleging the following purported contacts subject Lebaschi to specific jurisdiction in Texas:

(1) Lebaschi "enter[ed] into three separate contracts with a Texas entity;" *id.* at ¶ 9;

(2) Lebaschi "ma[de] payments to a Texas bank account," and the Agreement "obligates [Lebaschi] to remit all payments to [LMC] in Texas;" *id.* at ¶¶ 9, 11;

(3) Lebaschi "accept[ed] goods shipped from Texas;" *id.* at ¶ 9;

(4) Lebaschi "return[ed] products to Texas for credit;" *id.*;

(5) The Agreement "identifies [LMC's] Fort Worth address as the place for notice and payment;" *id.* at ¶ 11;

(6) The Agreement contains a Texas choice-of-law provision; *id.*;

(7) LMC "assembled, warehoused, and shipped" the goods from Texas; *id.* at § 12; and

(8) LMC was injured in Texas; *id.* at ¶ 13.

Such contacts are insufficient to show Lebaschi purposefully availed himself of the privilege of conducting activities in Texas and that he should be subject to specific jurisdiction in Texas.

    **i.    Lebaschi is not Subject to Specific Jurisdiction Because He Contracted With and Received Goods From a Texas Resident (Alleged Contacts 1, 3).**

LMC alleges Lebaschi is subject to specific jurisdiction because he "enter[ed] into three separate contracts with a Texas entity" and "accept[ed] goods shipped from Texas." *See* ECF Doc. 10 at ¶ 9. LMC is wrong.

First, a point of clarification: LMC's causes of action only relate to <u>one</u> contract between Lebaschi and LMC, the "Fulfillment/Rebate Agreement" dated June 6, 2023. *See, e.g., id.* at ¶¶ 1 (defining "Agreement"), 32-38 (breach of contract claim only relates to "the Agreement"). For the purposes of determining specific jurisdiction, the only contacts that matter are those from which the causes of action arise. *See Ford Motor Co.*, 592 U.S. at 359.

More to the point, Lebaschi did not become subject to specific jurisdiction by contracting with a Texas resident who went on to send goods from Texas to Lebaschi. *See Stuart*, 772 F.2d at 1190; *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (Fifth Circuit "has repeatedly held" "the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant"); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (no specific jurisdiction where "(1) [defendant] entered into a contract with [plaintiff], a Texas corporation; (2)

[defendant] sent a final revised joint operating agreement from Oklahoma to Texas; (3) [defendant] sent three checks from Oklahoma to Texas in partial performance of its contractual obligations; and (4) [defendant] engaged in extensive telephonic and written communication with [plaintiff]").

To that end, "a purchaser who selects an out-of-state seller's goods or services based on their economic merit does not thereby purposefully avail itself of the seller's state law, and does not merely by purchasing from the seller submit to the laws of the jurisdiction in which the seller is located or from which it ships merchandise." *Health Commc'ns, Inc. v. Mariner Corp.*, 860 F.2d 460, 465 (D.C. Cir. 1988); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) ("It is clearly established that "merely contracting with a resident of the forum state does not establish minimum contacts."); *TXU Energy Retail Co., LP v. Emanuel Med. Ctr., Inc.*, No. CIV.A. 3:02-CV-2400-, 2003 WL 21281651, at *4 (N.D. Tex. May 28, 2003) (Ramirez, J.) ("It is difficult to find that a nonresident defendant has 'reached out' to a resident plaintiff where the nonresident defendant is a buyer, rather than a seller of the resident plaintiff's products."); *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) ("Merely entering into a contract with a forum resident does not provide the requisite contacts between a nonresident defendant and the forum state. <u>This is particularly true when the nonresident defendant is a buyer</u>, rather than a seller.") (brackets omitted, emphasis added).  As the Fifth Circuit has explained:

> . . . [M]erely contracting with a resident of Texas is not enough to establish minimum contacts. Moreover, a plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas.

*Moncrief Oil Int'l*, 481 F.3d at 312. As discussed in *Moncrief Oil*, Lebaschi merely (allegedly) "contract[ed] with a resident of Texas;" he "did not perform any of [his] obligations in Texas," and "the contract did not require performance in Texas." *Id.*

      **ii.    Lebaschi's Payments to LMC Do Not Subject Him to Specific Jurisdiction (Alleged Contact 2).**

LMC alleges Lebaschi is subject to specific jurisdiction because he "ma[de] payments to a Texas bank account" and because the Agreement "obligates [Lebaschi] to remit all payments to [LMC] in Texas." *Id.* at ¶ 9. Again, LMC is wrong.

LMC's allegations again require clarification. First, Lebaschi, while in California, made payments to an online portal, not to LMC's Texas bank account. *See* Ex. 1 at ¶ 5; ECF Doc. 10-1 at p. 3 ¶ 6. Second, although the Agreement requires Lebaschi to make payments to LMC, it does not state that such payments must be remitted to LMC <u>in Texas</u>. ECF Doc. 10-1 at p. 3 ¶ 6.

Even if Lebaschi's transmission of payments through an online portal can be considered to be directed at Texas, the Fifth Circuit does not "weigh heavily" the transmission of payments "into the forum state in exchange for the goods." *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983); *see also Jones v. Artists Rts. Enf't Corp.*, 789 F. App'x 423, 426 (5th Cir. 2019) ("The payments were sent to Louisiana only because Johnson resided there, which fails to establish purposeful minimum contacts."); *Freudensprung*, 379 F.3d at 344 (Fifth Circuit "has repeatedly held" that "mailing payments to the forum state" is "insufficient to establish" specific jurisdiction). Such contact is premised on the coincidental location of the seller, not on the buyer's purposeful availment of Texas law.

      **iii.    Lebaschi is not Subject to Specific Jurisdiction for Returning Goods to LMC (Alleged Contact 4).**

LMC alleges Lebaschi is subject to specific jurisdiction because he "return[ed] products to Texas for credit." ECF Doc. 10 at ¶ 9. Again, LMC is wrong. Like the transmission of payments

to a Texas resident, this contact is based solely on the seller's coincidental location, not on the buyer's purposeful availment of Texas law. *See Stuart*, 772 F.2d at 1192 (no specific jurisdiction where defendant shipped goods to plaintiff in Texas for modification).

    iv.    **The Agreement Does Not Identify LMC's Fort Worth Address as the Place for Notice and Payment (Alleged Contact 5).**

LMC alleges the Agreement "identifies [LMC's] Fort Worth address as the place for notice and payment." ECF Doc. 10 at ¶ 11. Not so. The Agreement does not list LMC's Fort Worth address whatsoever, let alone list such address as "the place for notice and payment." *See generally* ECF Doc. 10-1. In fact, the Agreement requires Lebaschi to use a website—accessible from outside of Texas—to make the payments. *See id.* at p. 3 ¶ 6.

    v.    **The Agreement's Choice of Law Provision Does Not Subject Lebaschi to Specific Jurisdiction (Alleged Contact 6).**

A court may consider the existence of a "choice-of-law provision" when deciding whether a defendant purposefully availed himself of a forum, but "such a provision standing alone would be insufficient to confer jurisdiction." *Burger King*, 471 U.S. at 482. The Court has held that "a governing law clause [in favor of Texas law] standing alone is insufficient to confer jurisdiction," where the nonresident defendant merely "contracted with Texas residents and engaged in communications" with them. *Watkins v. Gateway First Bank*, No. 3:20-CV-2136-L-BH, 2021 WL 1725534, at *5 (N.D. Tex. Mar. 15, 2021) (Ramirez, J.); *see also Stuart*, 772 F.2d at 1196 (choice-of-law clause in favor of Texas was not sufficient, "when added to the other alleged contacts, to alter [Fifth Circuit's] holding that an inference of purposeful availment is not supported by the totality of the purported contacts between [defendant] and Texas").

    vi.    **LMC's Contacts with Texas Do Not Subject Lebaschi to Specific Jurisdiction (Alleged Contacts 7, 8).**

LMC alleges Lebaschi is subject to specific jurisdiction because LMC "assembled, warehoused, and shipped" goods from Texas and was injured in Texas. *See* ECF Doc. 10 at ¶¶ 12,

13. Again, LMC is wrong. A "plaintiff's…unilateral activities cannot establish minimum contacts between the defendant and forum state." *Moncrief Oil Int'l Inc.*, 481 F.3d at 311; *see also Stuart*, 772 F.2d at 1190. Further, the question is not whether the plaintiff suffered an injury in the forum state, but rather, whether the plaintiff's injuries "arise out of or relate to" the defendant's activities "purposefully directed" at the forum. *See Stuart*, 772 F.2d at 1190.

> vii. **Lebaschi's Communications with a Texas Resident Do Not Subject Him to Specific Jurisdiction.**

LMC does not allege that Lebaschi became subject to specific jurisdiction in Texas merely because he communicated, from outside of Texas, with LMC representatives who might have been in Texas. He did not. The Fifth Circuit has "held that communications relating to the performance of a contract themselves are insufficient to establish minimum contacts." *McFadin*, 587 F.3d at 760; *see also Freudensprung*, 379 F.3d at 344.

> viii. **Fifth Circuit Case Law on Point**

In *Stuart v. Spademan*, the Fifth Circuit considered each of the alleged contacts at issue in this case and held the non-resident defendant was not subject to personal jurisdiction. 772 F.2d 1185, 1192, 1194 (5th Cir. 1985). In *Stuart*, the nonresident defendant "entered into a contract with Texas residents" (LMC's Alleged Contact 1); "mail[ed] … payments to the plaintiffs in Texas" (Alleged Contact 2); received goods shipped by the plaintiff seller from Texas (Alleged Contact 3); "shipped [goods] to the plaintiffs in Texas for modification" (Alleged Contact 4); entered into an agreement requiring payments to be made directly into a Texas bank account (Alleged Contact 5); entered an agreement which "included a choice-of-law provision that anticipated the application of Texas law" (Alleged Contact 6); and "exchanged letters and telephone calls" with the plaintiffs. *Id.* at 1188, 1192, 1194. The plaintiffs were Texas residents, and they took relevant actions in Texas and suffered any injuries in Texas (Alleged Contacts 7, 8). *Id.* at 1187-88. The

Fifth Circuit concluded that "an inference of purposeful availment is not supported by the totality of the purported contracts between [the defendant] and Texas." *Id.* at 1196. The same is true here.

### ix. Recent Opinion Involving LMC is Distinguishable

Earlier this month, in another case brought by LMC, Judge O'Connor denied a defendant's motion to dismiss for lack of personal jurisdiction. *See Legacy Med'l Consultants v. Charles*, No. 4:25-CV-492-O (N.D. Tex. Sept. 2, 2025) (ECF No. 22). That case, however, is distinguishable because it involved claims for fraudulent misrepresentation against a defendant who "sent over 30 emails to Plaintiff." *Id*. at 7. The Court viewed the emails as containing misrepresentations of future payment that were false when made. *See id.* at 11.

These factual differences are material because "[i]n the personal jurisdiction context, '[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.'" *Holland v. CryptoZoo Inc.*, No. 1:23-CV-00110-ADA-RCG, 2025 WL 2493064, at *7 (W.D. Tex. Aug. 25, 2025) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999)). In the present case, Lebaschi is not alleged to have directed fraudulent misrepresentations—or any other intentional tort—at Texas, but rather, Lebaschi is merely alleged to have entered into a contract with a Texas resident and to have failed to make online payments from California. *See generally* ECF Doc. 10.

## IV. PRAYER

WHEREFORE, PREMISES CONSIDERED, Lebaschi prays that the Court grant this Motion and, pursuant to Federal Rule of Civil Procedure 12(b)(2), dismiss all causes of action asserted against Lebaschi for lack of personal jurisdiction.

Respectfully submitted,

*/s/ Jordan M. Parker*
Jordan M. Parker
State Bar No. 15491400
jparker@canteyhanger.com
Derek Carson
State Bar No. 24085240
dcarson@canteyhanger.com
Michael Ackerman
State Bar No. 24120454
mackerman@canteyhanger.com

CANTEY HANGER LLP
Cantey Hanger Plaza
600 West 6th Street, Suite 300
Fort Worth, Texas 76102
(817) 877-2800  Telephone
(817) 877-2807  Facsimile

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I certify that on September 19, 2025, a true and correct copy of the foregoing was served on counsel for all parties via CM/ECF filing and via email.

*/s/ Michael Ackerman*
Michael Ackerman