IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LEGACY MEDICAL CONSULTANTS, LP, | § | |
| SUCESSOR IN INTEREST TO LEGACY | § | |
| MEDICAL CONSULTANTS, LLC, | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-00940-P |
| | § | |
| AMIR LEBASCHI D/B/A ORANGE COUNTY | § | |
| FOOT & ANKLE INSTITUTE. | § | |

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

COMES NOW Defendant Amir Lebaschi d/b/a Orange County Foot & Ankle Institute ("Lebaschi") and files this his reply in support of his motion to dismiss Plaintiff's Amended Complaint [ECF 14] ("Motion"). Lebaschi respectfully shows the Court as follows:

**I.  The Court Must Consider Only Lebaschi's Contacts with Texas, Not Legacy's.**

As explained at length in Lebaschi's Motion, he is not subject to personal jurisdiction in Texas because he lacks the requisite "minimum contacts" with Texas. [*See* ECF 14, pp. 3-10]. In response, Legacy argues that personal jurisdiction exists based almost entirely on its own relationship with Texas, not Lebaschi's:

> **Legacy** executed the Agreement in Fort Worth; **Legacy's** Texas personnel processed orders and generated invoices in Texas; shipments originated from **Legacy's** Fort Worth facility; returns were shipped back to [**Legacy** in] Texas for credit; and the Agreement required payment to **Legacy's** Texas bank account under a Texas choice-of-law clause.

[ECF 26, p. 7 (emphasis added)]. However, "[a] plaintiff cannot manufacture specific personal jurisdiction over a defendant by relying on the plaintiff's own conduct." *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 375 (5th Cir. 2024).

Citing the *Command-Aire* case, Legacy insists its own actions in Texas are relevant to the jurisdictional analysis because courts "will give 'weighty consideration' to the place where the contract is performed." [ECF 26 p. 14]. However, the very next sentence of the *Command-Aire* opinion—which Legacy omits—clarifies: "If, however, the forum plaintiff's decision to perform its contractual obligation within its own forum state is totally unilateral, it cannot be viewed as purposeful on the part of the nonresident and the weight necessarily is diminished." *Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 94 (5th Cir. 1992).

Under binding Fifth Circuit precedent, where a contract does not explicitly contemplate performance in Texas (as is the case here), the plaintiff's performance in Texas cannot serve as a contact upon which specific jurisdiction may be based. *See Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 501 (5th Cir. 2022) (Fifth Circuit has "rejected the argument that states have personal jurisdiction over breach of contract cases where a nonresident enters into a contract with a known resident of the forum state, if it is reasonably foreseeable that the resident will perform a material part of its obligations in the forum state and thereby cause business activity in the forum state") (internal quotes and brackets omitted); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 313 (5th Cir. 2007) (no specific jurisdiction where "Moncrief agreed to perform analysis, without any discussion of *where* it would be done," "[t]he contract was silent as to location," and, "[g]iven the nature of the work, there's no indication that the location of the performance mattered"); *see also Unnikrishnan v. IoT.nxt Americas USA, Inc.*, No. 4:22-CV-870, 2025 WL 2108746, at *7 (E.D. Tex. July 28, 2025) ("the offer letter did not require performance in Texas, nor did it specify that Plaintiffs would work in this district"); *see also Dudek v. Donald C. & Eleanor J. Glanville Revocable Tr.*, 109 F. App'x 657, 659 (5th Cir. 2004) (no personal jurisdiction where "the sole contact between the non-resident defendant and the forum state is a

contract that did not require performance, other than payment, by the defendant in the forum state"); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983) ("Although it did agree to purchase goods which it knew were to be manufactured by Hydrokinetics in Texas, no performance by Alaska Mechanical was to take place in Texas, other than perhaps the payment for the goods. We do not believe that the unilateral activity of Hydrokinetics in Texas satisfies the requirement of contact between Alaska Mechanical and the state of Texas.").

Here, the Agreement does not even mention Texas outside of the choice-of-law clause. [*See* ECF 10-1]. Like in the case law cited above, the Agreement does not state where Legacy would perform its contractual obligations, and it did not matter where Legacy performed. [*See id.*]. Further, Legacy's insinuation that Lebaschi reached into Texas to purposely conduct business in Texas is simply not accurate. [*See, e.g.,* ECF 26, p. 10]. The Agreement exists because Legacy "markets its products to doctors all over the country." [*Id.*, p. 8; *see also* ECF 10 ¶ 16].

In short, Legacy attempts to impute its own contacts with Texas onto Lebaschi by virtue of Lebaschi's contractual relationship with Legacy. However, Lebaschi's contacts with a *Texan* do not amount to contacts with *Texas*.

## II.   Legacy Relies Upon Non-Existent Contract Terms.

Legacy's argument is based largely on non-existent contractual terms. Legacy repeatedly asserts that Lebaschi is subject to the Court's jurisdiction because (1) the Agreement "identifies Legacy's Fort Worth address as the place for notice and payment," contains "terms that centered material performance in Texas," and "contemplated continuing performance in Texas," and (2) "the Agreement required payment to Legacy's Texas bank account." [*See, e.g.,* ECF 26 pp. 7, 10, 14, 16]. But the Agreement does not even mention Texas outside of the choice-of-law clause. [*See* ECF 10-1].

### III. Lebaschi's Contacts Do Not Establish Jurisdiction.

Other than the choice-of-law clause, the contacts discussed by Legacy all exist in just about any sale of goods between a non-resident buyer and a resident seller. In the vast majority of such transactions, the seller will process orders in Texas, the seller will store and ship goods from Texas, the seller will send invoices from Texas, the buyer will send payments to a Texas bank account, and the seller will suffer any injury in Texas, all by virtue of the seller's location in Texas.

To treat the existence of a choice-of-law clause as tipping the scale in favor of personal jurisdiction would have the effect of transforming choice-of-law clauses into *de facto* forum-selection clauses, which, in turn, would give resident sellers the benefit of a forum-selection clause when the non-resident only agreed to a choice-of-law provision.

### IV. Lebaschi's Return of Goods to Legacy is Irrelevant.

In addition to its heavy reliance on its own contacts with Texas, Legacy argues that Lebaschi should be subject to the Court's jurisdiction because he returned unwanted goods to Legacy in Texas. [*See, e.g.,* ECF 26 p. 9]. That alleged contact is irrelevant. Because Legacy concedes Lebaschi is not subject to general jurisdiction in Texas [*see* ECF 26 p. 13 n.1], Lebaschi's only relevant contacts with Texas are those from which Legacy's claims arise. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021); *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). Legacy's own pleadings demonstrate that Legacy's claims do not arise from Lebaschi returning goods to Legacy.

According to Legacy, this lawsuit "arises out of Defendant's breach of contract by failing to pay over two hundred thousand dollars for products Defendant purchased from Legacy." [ECF 10 ¶¶ 1, 63-64 (alleging "the principal balance owed by Dr. Lebaschi remains $236,520.00" and stating Legacy seeks damages in such amount)]. But Legacy's own Response distinguishes

between (1) the goods for which Lebaschi allegedly did not pay <u>and from which its claims arise</u>, and (2) the goods that Lebaschi returned <u>and upon which Legacy attempts to base personal jurisdiction</u>. According to Legacy:

1. Lebaschi "returned $100,400 worth of products to Legacy's Texas headquarters for credit;" [ECF 26 p. 10]; and

2. "Lebaschi has failed to make payments in full to Legacy for the Products he received between June 16, 2023, to August 17, 2023, totaling $236,520.00." [*Id.* p. 7].

Legacy does not seek payment for the $100,400 worth of goods returned by Lebaschi. Tellingly, Legacy's live pleading only mentions the returns in a section about jurisdiction, not in any section about the facts underlying Legacy's claims. [*See* ECF 10].

Because specific jurisdiction can only exist where the claims "arise out of" the defendant's contacts with the forum state, Lebaschi's return of goods to Legacy is not relevant to the Court's analysis. *See Am. Bank, F.S.B. ex rel. Am. Premium Fin. v. Auto-Owners Mut. Fire & Cas. Ins. Co.*, No. 4:10-CV-331-A, 2010 WL 3784282, at *4 (N.D. Tex. Sept. 27, 2010) (McBryde, J.) (Defendant's return of a completed form to Plaintiff was not relevant to personal jurisdiction analysis because Plaintiff's claims did not "arise from the form"); *U.S. Rest. Props. Operating L.P. v. Aloha Petroleum, Ltd.*, No. 3:01-CV-0987-D, 2001 WL 1568762, at *3 (N.D. Tex. Dec. 5, 2001) (Fitzwater, J.) (meeting between the parties in Dallas was irrelevant where plaintiff did "not allege that its claim arises out of, or relates to" such meeting); *Clemons v. WPRJ, LLC*, 928 F. Supp. 2d 885, 903 (S.D. Tex. 2013) (Harmon, J.) (defendant's execution of promissory note in Texas was irrelevant where "litigation did not arise out of or relate to" such act).

For example, in a case arising from negligently calculated royalty payments, the Fifth Circuit held that other royalty payments, out of which the claims did not arise, were not relevant to the specific jurisdiction analysis. *See Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 317, 321 (5th Cir. 2020). Likewise, here Legacy's claims arise only from Lebaschi's alleged non-payment for certain goods, not from his return of other goods. Lebaschi's return of these other goods cannot serve as a contact in the jurisdictional analysis.

## IV. The *Stuart* Case is On-Point, Binding Authority.

In his Motion, Lebaschi directs the Court to binding, on-point authority, the *Stuart* case. *See* ECF 14 p. 9. In *Stuart*, the defendant was a non-resident who engaged in the design, manufacture, and distribution of ski bindings. *See Stuart v. Spademan*, 772 F.2d 1185, 1187 (5th Cir. 1985). The plaintiffs, who were residents of Texas, ran a ski supply store that stocked the defendant's bindings. *See id.* at 1188. The plaintiffs determined that the defendant's bindings could be modified to make it easier to fasten and release. *See id.* at 1187. The plaintiffs approached the defendant to solicit interest about the modification. *See id.* at 1188. To learn more about the modification, the defendant sent bindings to the plaintiff in Texas for modification. *See id.* The plaintiffs modified the bindings and sent them back to the defendant in Nevada. *See id.* The plaintiffs went on to file an application for a patent on the invention. *See id.* Later, the defendant sent a demonstration unit of the binding to the plaintiffs in Texas. *See id.*

Following negotiations by letter and telephone, the plaintiffs sold their patent to the defendant. *See id.* The assignment agreement provided that the plaintiffs "would assist in any further patent applications or for reissuance of the existing patent" and that the defendant would make payments to the plaintiffs in Texas. *See id.* Later, the parties executed an amendment to the assignment agreement, which required the defendant to make the payments "directly to the

plaintiffs' bank accounts in Texas." *See id.* The amendment also substituted the following choice-of-law provision for that in the original agreement, which had provided for the application of California law: "All of the terms of this agreement as amended shall be subject to and shall be construed and enforced according to the laws of the state in which the aggrieved party under the terms of the contract is residing at the time such breach of contract or grievance occurs." *See id.* The plaintiffs executed both the assignment agreement and the amendment in Texas, while the defendant executed both in another state. *See id.*

Pursuant to the amended agreement's terms, the defendant made eight annual payments directly to the plaintiffs' bank accounts in Texas. *See id.* In the meantime, the defendant sought reissuance of the patent, and, to this end, the defendant's attorneys in California exchanged a "significant amount of correspondence and numerous telephone calls" with the plaintiffs in Texas. *See id.* After a few years of collaboration between the parties, the United States Patent and Trademark Office declined to reissue the patent, and the defendant informed the plaintiffs that he intended to discontinue the payments under the agreement due to the failure of consideration. *See id.* The defendant did cease payments. *See id.* The plaintiffs filed a breach of contract action in this Court, and the defendant filed a motion to dismiss for lack of personal jurisdiction, which the trial court granted. *See id.* at 1189.

On appeal, the Fifth Circuit held the defendant's contacts described above did not subject the defendant to personal jurisdiction in Texas. *See id.* at 1192.

First, the Court "stress[ed] that [the defendant's] contract with the Texas plaintiffs does not alone establish the sufficient minimum contacts with Texas." *Id.* at 1193.

Second, the Court found that "the shipment of articles to the forum state is insufficient to justify an exercise of in personam jurisdiction over the nonresident shipper." *Id.*

Third, the Court held that the pre- and post-contractual communications between the parties—which the Court elsewhere characterized as "numerous"—did not constitute purposeful availment upon which specific jurisdiction could be based. *See id.* at 1188, 1193-94.

Fourth, the Court held the defendant's contractually-required payments to a Texas bank account could "hardly be termed significant in terms of determining purposeful availment of the benefits of the forum state's laws." *Id.* at 1194.

Fifth, the Court held that, "even assuming that the choice-of-law provision facilitates interpretation and enforcement of the agreement in accordance with Texas law, the provision is certainly insufficient of itself to justify jurisdiction over [the defendant]." *Id.* at 1196. The Court continued, "Nor is it sufficient, when added to the other alleged contacts, to alter our holding that an inference of purposeful availment is not supported by the totality of the purported contacts between Spademan and Texas." *Id.*

The *Stuart* case directly addresses each of the kinds of contacts upon which Legacy relies. Like in this case, the nonresident defendant in *Stuart* entered a contract with Texas residents to purchase an asset—there, intellectual property, here medical goods—created in Texas. Like in this case, the nonresident defendant in *Stuart* communicated with Texas residents from outside of Texas. Like in this case, the nonresident defendant in *Stuart* executed the agreement from outside of Texas, while the plaintiffs executed it from within Texas. Like in this case, the nonresident defendant in *Stuart* sent contractually-required payments from out-of-state to a bank account in Texas. Like in this case, the agreement in *Stuart* contained a choice-of-law provision in favor of Texas law (for the purposes of the Fifth Circuit's analysis). Like in this case, the nonresident defendant in *Stuart* shipped items to Texas, although unlike in *Stuart*, the claims in this case do

not arise from such items. Like in this case, the foregoing contacts were insufficient to confer personal jurisdiction.

Legacy attempts to distinguish *Stuart* by arguing *Stuart* (1) "did not have an explicit Texas choice of law provision," (2) involved a contract in which "performance was not focused in Texas," and (3) "did not involve the ongoing manufacturing and shipment of products in Texas." *See* ECF 26 p. 20. These arguments come up short. First, although the choice-of-law provision in *Stuart* did not explicitly state that Texas law applied, the Fifth Circuit effectively treated it as though it did. *See Stuart*, 772 F.2d at 1196.

Second, although the agreement in *Stuart* did not expressly call for performance in Texas, neither does the agreement at issue in this case. [*See generally* ECF 10-1 (agreement does not even mention Texas except in choice-of-law provision)]. In both cases, the agreements contemplate a nonresident buyer purchasing assets (and, in *Stuart*, services), which happened to be created (and performed) in Texas, from a seller who happened to reside in Texas. In fact, the amended *Stuart* agreement expressly required the buyer to send payments directly to the seller's Texas bank account, while the Legacy agreement does not.

Third, although the *Stuart* agreement did not involve "ongoing manufacturing and shipment of products in Texas," it did require ongoing obligations by both parties: the Texas resident sellers were obligated to—and did—"assist in any further patent applications or for reissuance of the existing patent," and the nonresident buyer was obligated to—and did—make "annual payments" to the seller. *See Stuart*, 772 F.2d at 1188. In fact, the agreement in *Stuart* contemplated a long-term relationship in more definite terms than the agreement at issue here. The *Stuart* agreement required "<u>annual</u> payments" and contemplated the sellers providing services relating to "any further patent applications." *Id.* (emphasis added). In contrast, the agreement at

bar simply permits, but does not require, Lebaschi to place future orders. [*See* ECF 10-1]. And the parties' relationship in *Stuart* lasted multiple years, while the one here lasted "three and a half months." [ECF 26 p. 24].

The concept of specific jurisdiction based on an ongoing contractual relationship comes from the *Burger King* case, where a nonresident franchisee entered "a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida," the forum state, involving "long-term and exacting regulation of his business from Burger King's Miami headquarters." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985). The Legacy agreement, like the *Stuart* agreement, does "not contemplate a long-term relationship with the kinds of continuing obligations and wide-reaching contacts envisioned by the *Burger King* contract." *Stuart*, 772 F.2d at 1194.

### V. Similar Cases Brought by Legacy Have Been Dismissed for Lack of Personal Jurisdiction.

Legacy argues that the Court should deny Lebaschi's Motion because similar motions were denied in other cases involving Legacy. [*See* ECF 26 p. 17]. But there are also at least two similar cases brought by Legacy in which a motion like Lebaschi's was granted: *Legacy Medical Consultants, LP v. Ankle & Foot Centers of Western New York*, cause no. 048-348472-23, in the 48th Judicial District of Tarrant County, Texas; and *Legacy Medical Consultants, LP v. Jason Luttrell, d/b/a Heeling Soles Podiatry LLC*, cause no. 153-362555-25, in the 153rd Judicial District of Tarrant County, Texas. The Court should review the facts of this particular case and, applying the Fifth Circuit's opinion in *Stuart*, dismiss for lack of personal jurisdiction.

### Conclusion

Legacy has failed to carry its burden to establish personal jurisdiction over Lebaschi. Accordingly, Lebaschi urges the Court to grant his Motion and dismiss Legacy's claims.

        Respectfully submitted,

        */s/ Jordan M. Parker*
        Jordan M. Parker
        State Bar No. 15491400
        jparker@canteyhanger.com
        Derek Carson
        State Bar No. 24085240
        dcarson@canteyhanger.com
        Michael Ackerman
        State Bar No. 24120454
        mackerman@canteyhanger.com

        CANTEY HANGER LLP
        Cantey Hanger Plaza
        600 West 6th Street, Suite 300
        Fort Worth, Texas 76102
        (817) 877-2800  Telephone
        (817) 877-2807  Facsimile

        **ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that on November 7, 2025, a true and correct copy of the foregoing was served on counsel for all parties via CM/ECF filing and via email.

        */s/ Michael Ackerman*
        Michael Ackerman