UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**LEGACY MEDICAL CONSULTANTS, LP,**

   Plaintiff,

v.                                      No. 4:25-cv-00940-P

**AMIR LEBASCHI,**

   Defendant.

## ORDER

Before the Court are Defendant's Motion to Dismiss (ECF No. 14), Plaintiff's Response (ECF No. 26), and Defendant's Reply (ECF No. 27). Having considered the briefing and relevant law, the Court determines that Defendant's Motion to Dismiss should be **DENIED**.

## BACKGROUND[1]

This suit arises from missed payments. Defendant, Dr. Amir Lebaschi, a licensed podiatric medical doctor, contracted with Plaintiff, Legacy Medical Consultants, L.P., to buy human tissue products used to treat chronic, non-healing wounds. Plaintiff is a Texas limited partnership, and Defendant is a citizen of California.

After signing the contract, Lebaschi was required to provide payment for the products ordered within sixty days after shipment. *See* Complaint, Ex. A. Yet after executing the Agreement, Dr. Lebaschi began missing payments. To date Dr. Lebaschi still owes over two hundred thousand dollars for the products he ordered and received from Legacy.

---

[1] The facts are set forth as alleged in the complaint.

Plaintiff brought this action against Defendant in Texas state court seeking damages for the missed payments by alleging breach of contract, among others.

Defendant then removed the case to this Court (ECF No. 1) and moved to dismiss Plaintiff's Complaint for lack of personal jurisdiction under Federal Rules of Civil Procedure 12(b)(2). The Motion to Dismiss is now ripe for the Court's review.

## LEGAL STANDARD

"When a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

A "plaintiff may bear his burden [of proof] by presenting a *prima facie* case that personal jurisdiction is proper" when the court "rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing.'" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). Courts may consider "the contents of the record before [it] at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Id.* at 344 (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).

## ANALYSIS

The Fourteenth Amendment's Due Process Clause limits the power to exercise jurisdiction to cases when the defendant has such "'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 141 S. Ct. 1017, 1024, 209 L.Ed.2d 225 (2021) (quoting *International Shoe. Co. v. Washington*, 326 U.S. 310, 316–17, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks omitted)). This analysis, which focuses on the nature

and extent of the defendant's relationship to the forum, recognizes two forms of personal jurisdiction: general or specific. *Id.*

The Court first analyzes whether it can assert general personal jurisdiction over Lebaschi. After concluding that general jurisdiction does not exist, it turns to the question of specific jurisdiction. The Court concludes that there is specific personal jurisdiction over Lebaschi.

### A. The Court lacks general personal jurisdiction over Lebaschi.

General personal jurisdiction allows a court to hear "all claims against the defendant, no matter their connection to the forum." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018). Thus, to exercise general personal jurisdiction, a defendant's contacts with the forum state must be so "continuous and systematic as to render them essentially at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (internal quotations omitted).

Legacy's Complaint fails to allege the *prima facie* case for general jurisdiction over Lebaschi. *First*, for an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). "Domicile requires the demonstration of two factors: residence and the intention to remain." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011) (per curiam). Lebaschi's domicile is in the State of California, where he resides and intends to remain. *See* ECF No. 14 at Ex. 1; *see also* ECF No. 10 at 1.[2] Therefore, the Court lacks general personal jurisdiction over Lebaschi.

### B. The Court can exercise specific personal jurisdiction over Lebaschi.

Lebaschi is subject to specific personal jurisdiction here because (1) he purposefully availed himself of the privilege of conducting business in Texas; (2) Legacy's claims arise from and relate to its contacts with

---

[2] Legacy contends Lebaschi was doing business as Orange County Foot & Ankle Institute. *See* ECF No. 10 at 1. However, since both parties concede that "Orange County Foot & Ankle Institute" is a tradename, and not a legal entity, the rules governing general jurisdiction over entities do not apply to Lebaschi.

3

Texas; and (3) the assertion of personal jurisdiction does not offend traditional notions fair play and substantial justice.

Specific jurisdiction, or case-linked jurisdiction, allows a court to assert jurisdiction over a defendant only in particular instances. *See Ford Motor Co.*, 141 S. Ct. at 1024. There must be a connection between the defendant, the forum, and the underlying controversy to establish specific jurisdiction. *See Id.* at 1024–25. The purpose of specific jurisdiction is to "ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Id.* at 1025 (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 137 S. Ct. 1773, 1780, 198 L.Ed.2d 395 (2017)).

To determine if specific jurisdiction exists, courts apply a three-part test:

(1) whether the defendant has minimum contacts with the forum state;

(2) whether the plaintiff's cause of action arises out of or relates to the defendant's forum-related contacts; and,

(3) whether the exercise of personal jurisdiction is fair and reasonable.

*See Carmona v. Leo Ship Man., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). If the plaintiff establishes the first two prongs of the test, then the defendant has the burden to make a "compelling case" that jurisdiction in this case is either unfair or unreasonable. *Id.*

1. Lebaschi purposefully availed himself of the privilege of conducting business in Texas.

To establish "minimum contacts" with Texas, Legacy must allege that Lebaschi "purposefully availed [himself] of the privilege of conducting activities" here "such that [he] should reasonably anticipate being haled into court" in Texas. *Id.* This prong of the jurisdictional test is meant to protect defendants from being "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the

4

lateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

In its Amended Complaint, Legacy claims the following contacts subject Lebaschi to specific jurisdiction in Texas: (1) Lebaschi entered into a contract with Legacy in Texas; (2) Lebaschi made online payments to a Texas bank account; (3) Lebaschi accepted goods that Legacy assembled, warehoused and shipped from Texas; (4) Lebaschi returned products to Texas for credit; (5) The Agreement identifies Legacy's Fort Worth address as the place for notice and payment; (6) The Agreement contains a Texas choice-of-law provision; and (7) Legacy was injured in Texas.

We agree with Defendant that, in isolation, several of these contacts might not establish personal jurisdiction. For example, it is well settled that a contract with a Texas resident does not, by itself, constitute a minimum contact. *See Moncrief Oil Int'l Inc. v. OAO Gazprom, 481 F.3d 309, 312* (5th Cir. 2007) (explaining that "merely contracting with a resident of Texas is not enough to establish minimum contacts"). But jurisdiction cannot be assessed by viewing each contact in a vacuum. The question is whether, taken together, Lebaschi's conduct reflects a deliberate affiliation with Texas, not a fortuitous transaction or a unilateral action by Legacy.

Here, the totality of the contacts shows purposeful availment by Lebaschi. The Parties' Agreement is governed by Texas law, an express indication that disputes would be resolved under the protections and obligations of Texas's legal framework. Lebaschi repeatedly ordered products that Legacy assembled and shipped from its Texas facilities. He returned products to Texas for credit, thereby invoking Legacy's Texas-based inventory and business processes. And when Lebaschi stopped paying, the financial injury was felt in Texas, as were the resulting credit and collection efforts. On these facts, it was foreseeable, not fortuitous, that Lebaschi could be haled into a Texas court.

Defendant relies heavily on *Stuart v. Spademan*, 772 F.2d 1185, 1187 (5th Cir. 1985). The Court agrees that *Stuart* provides a useful comparison, but it is ultimately distinguishable in a dispositive respect.

In *Stuart*, the Texas residents' obligations involved assisting with future patent applications and potential patent reissuance, activities connected to Texas largely because the individuals performing them happened to live in Texas. There was no ongoing stream of tangible goods being manufactured, assembled, warehoused, or shipped from Texas on a repeated basis that gave rise to the dispute.

Here, by contrast, the relationship was physically and operationally anchored in Texas. Legacy manufactured, stored, and shipped the very products at issue from its Texas warehouse, and Lebaschi knowingly engaged with that Texas-based operation on a continuing basis. That concrete, sustained connection is materially stronger than the attenuated intellectual-property assistance in *Stuart*.

In short, Texas was the operational hub of the Parties' commercial relationship: a relationship Lebaschi entered into, benefited from, and continuously invoked. Under these circumstances, the exercise of specific jurisdiction over Lebaschi is proper.

2. Legacy's breach of contract claims arises out of Lebaschi's Texas contacts.

Legacy must also allege that its suit "arise[s] out of or relate[s] to" Lebaschi's Texas contacts to establish specific personal jurisdiction. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 137 S. Ct. 1773, 1780, 198 L.Ed.2d 395 (2017). This prong ensures that there is "an affiliation between the forum and the underlying controversy." *Id.*

Legacy also satisfies the second prong of the specific-jurisdiction test because its claims arise directly from and relate to Lebaschi's purposeful and repeated contacts with Texas. Each contact that formed the Parties' commercial relationship is the same conduct that gives rise to the breach asserted here: contracting with a Texas entity; receiving products that were packaged and shipped from Texas; receiving invoices prepared and sent from Texas; the return of certain products for credit in Texas; and being obligated to remit payment to Legacy's account in Texas. In short,

6

the suit arises from, and directly relates to, Lebaschi's Texas-directed contacts.

### 3. The exercise of jurisdiction over Lebaschi does not offend traditional notions of fair play and substantial justice.

If the first two elements are met, the Court then asks the defendant to make a "compelling case" that the assertion of jurisdiction would not be fair or reasonable. *Carmona*, 924 F.3d at 193. In making this determination, the Court considers the following factors: "(1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of the several States in furthering fundamental substantive social policies." *Wilson v. Belin*, 20 F.3d 644, 647 n.3 (5th Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

Here, Legacy does not attempt to show that jurisdiction would be unfair or unreasonable. And in any event, the record provides no basis for such a conclusion. As to the first factor, Legacy has not demonstrated that litigating in Texas would impose any unusual or constitutionally significant burden on Plaintiff; modern transportation and communication diminish whatever general burden interstate litigation may present. As to factor two, Texas also has a strong interest in providing a forum for its businesses and in ensuring that out-of-state parties who contract with Texas entities honor their obligations. Factors three and four likewise favor jurisdiction: the witnesses, documents, and records appear to be located largely in Texas, making Texas the most efficient forum for resolving this dispute.

The remaining factors are neutral or weigh modestly in favor of jurisdiction. On balance, Defendant has not made a "compelling case"

that the exercise of personal jurisdiction would be unfair or unreasonable.

Accordingly, the Court concludes that it may assert personal jurisdiction over Legacy's claim against Lebaschi.

## CONCLUSION

For the reasons above, the Court **DENIES** Legacy's Motion to Dismiss.

**SO ORDERED** on this **3rd day of December 2025.**

_____
MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE