IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 4:25-CV-00940-P |
| AMIR LEBASCHI D/B/A ORANGE COUNTY FOOT & ANKLE INSTITUTE, | § § § § | |
| Defendant. | § § | |

**DEFENDANT AMIR LEBASCHI D/B/A ORANGE COUNTY FOOT & ANKLE INSTITUTE'S AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

COMES NOW, Defendant Amir Lebaschi d/b/a Orange County Foot & Ankle Institute ("Defendant") files this Amended Answer to Plaintiff Legacy Medical Consultants, LP's Amended Complaint and alleges as follows:

## I.    ADMISSIONS AND DENIALS

Pursuant to the Federal Rules of Civil Procedure 8(b), and for the express purpose of requiring Plaintiff to meet its burden of proof herein, Defendant denies each and every allegation contained in Plaintiff's Amended Complaint (ECF No. 10) except for those expressly admitted herein. The headings and paragraphs below directly correlate to the sections and numbered paragraphs of Plaintiff's Amended Complaint. Section headings are reproduced in this Answer for organizational purposes only, and Defendant does not admit any matter contained therein. Formatting below is also matched to that of the Plaintiff's Amended Complaint.

## INTRODUCTION

1.      Defendant admits that the parties entered into an agreement involving the provision of human tissue/skin graft products and that certain invoices were issued and not paid; however, Defendant denies that any amounts are due and owing. All remaining allegations are denied.

## PARTIES

2.      Admitted.

3.      Admitted.

## JURISDICTION AND VENUE

4.      Denied to the extent it states legal conclusions; otherwise denied.

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      This paragraph sets forth legal conclusions, to which no response is required. To the extent a response is required, Denied.

10.     Defendant admits that certain transactions occurred and that the agreement references Texas law; otherwise denied.

11.     Denied.

12.     Denied.

13.     Denied.

14.     Defendant denies personal jurisdiction but admits venue is proper.

15.     Defendant denies personal jurisdiction but admits venue is proper..

## FACTUAL ALLEGATIONS

### I.    Plaintiff Legacy Medical Consultants

16.    Defendant lacks knowledge and therefore denies.

17.    Defendant lacks knowledge as to third-party conduct; admits onboarding documentation; otherwise denied.

18.    Defendant admits execution of a fulfillment/rebate agreement; otherwise denied.

### II.    The Agreement with Dr. Lebaschi

19.    Admitted.

20.    Admitted.

21.    Admitted in part; otherwise denied.

22.    Admitted.

23.    Defendant admits invoices were issued but denies that any amounts are owed.

24.    Denied.

### III.    Dr. Lebaschi Fails to Pay Legacy at Least $236,520 that is Owed

25.    Denied.

26.    Denied.

27.    Denied.

28.    Defendant admits invoices were generated but denies amounts were due.

29.    Defendant admits nonpayment but denies obligation.

30.    Defendant admits product use but denies reimbursement was received and denies liability.

31.    Denied.

## COUNT I

## BREACH OF CONTRACT

32.     This paragraph simply realleges and reincorporates prior paragraphs, to which no response is required. To the extent a response is required, Defendant denies the allegations.

33.     Admitted.

34.     Denied as legal conclusion.

35.     Admitted.

36.     Defendant admits shipment and invoicing; otherwise denied.

37.     Denied.

38.     Denied.

## COUNT II

## IN THE ALTERNATIVE, QUANTUM MERUIT

39.     This paragraph simply realleges and reincorporates prior paragraphs, to which no response is required. To the extent a response is required, Defendant denies the allegations.

40.     Denied.

41.     Denied.

42.     Denied.

43.     Denied.

44.     Defendant admits use of products but denies uncompensated benefit.

45.     Admitted.

46.     Defendant admits nonpayment but denies obligation.

47.     Denied.

## COUNT III

## IN THE ALTERNATIVE, PROMISSORY ESTOPPEL

48.     This paragraph simply realleges and reincorporates prior paragraphs, to which no response is required. To the extent a response is required, Defendant denies the allegations.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.

## COUNT IV

## UNJUST ENRICHMENT

53.     This paragraph simply realleges and reincorporates prior paragraphs, to which no response is required. To the extent a response is required, Defendant denies the allegations

54.     Defendant admits delivery and invoicing but denies unjust enrichment.

55.     Denied.

56.     Denied.

57.     Denied.

## SUIT ON SWORN ACCOUNT

58.     This paragraph simply realleges and reincorporates prior paragraphs, to which no response is required. To the extent a response is required, Defendant denies the allegations.

59.     Defendant admits receipt of certain products but denies any amounts are owed.

60.     Denied.

61.     Denied to the extent it alleges amounts owed.

62.    Denied in part; lacks knowledge in part.

63.    Denied.

64.    Denied.

65.    Denied.

## REQUEST FOR JURY TRIAL

66.    No response required; to the extent required, denied.

## CONCLUSION AND PRAYER FOR RELIEF

Defendant denies Plaintiff is entitled to any relief whatsoever including actual and out-of-pocket damages, incidental damages, consequential damages, and exemplary damages, pre-judgment interest, court costs, attorney's fees and legal costs and expenses, and any other relief. Defendant further denies any wrongful act or conduct and pray that Plaintiff take nothing from this suit and instead the Court award Defendants all relief allowed by law and equity, including awarding costs associated with defending this suit

## II.    AFFIRMATIVE DEFENSES

1.    Defendant asserts the affirmative defense of a failure of a condition precedent as payment obligations were contingent upon reimbursement from Medicare or other payors. No reimbursement occurred.

2.    Defendant asserts the affirmative defense of fraudulent inducement as Plaintiff misrepresented reimbursement viability and financial risk allocation. In or around May or June 2023, sales representatives who had travelled to his office in California promised Defendant that Plaintiff would not seek payment for products purchased by Plaintiff if Medicare did not cover the corresponding claim for payment and that Defendant need not worry about paying for the products out of pocket. Plaintiff also mispresented the quality, status, and acceptability of its

products with respect to FDA approval and suitability for the services Plaintiff knew Defendant was providing.

3.    Defendant asserts the affirmative defense of a regulatory / reimbursement failure as the products at issue are subject to strict Medicare coverage rules. Plaintiff knew reimbursement was uncertain or unlikely.

4.    Defendant asserts the affirmative defense of unclean hands as plaintiff engaged in inequitable conduct by shifting known reimbursement risk and as such, Plaintiff's claims are barred in whole or in part.

5.    Plaintiff's claims are also barred in whole or in part by the doctrines of equitable estoppel, quasi-estoppel, and waiver due to Plaintiff's own representations and conduct.

6.    Defendant asserts the affirmative defense of a failure of consideration as the essential purpose of the product failed when Defendant was not reimbursed by Medicare.

7.    Defendant is entitled to offsets for returns, denials, and credits.

8.    Plaintiff failed to mitigate damages.

9.    Defendant asserts the affirmative defense of ambiguity as the written contract is ambiguous as to one or more key terms and ambiguities are construed against Plaintiff.

10.    Plaintiff fails to state a claim under federal standards.

11.    Plaintiff's own acts and/or omissions caused or contributed to Plaintiff's injuries, if any. Plaintiff's alleged losses and damages, if any, are the result of, and directly related to, Plaintiff's own conduct, actions and/or failure to act, and not of Defendant' sconduct, actions or failure to act. Plaintiff's own acts or omissions were the sole proximate cause or a proximate cause of her damages, if any.

12. Defendants also assert that Plaintiff failed to plead it was entitled to Incidental damages, consequential damages, and exemplary damages

13. Defendant reserve the right to amend or supplement these affirmative defenses as this case proceeds through discovery.

### III.   COUNTERCLAIMS
### FACTUAL NARRATIVE

14. This case is about a simple promise and a complete reversal of that promise by Plaintiff/Counter-Defendant.

15. Legacy sold medical products to Counter-Plaintiff under a clear and repeated assurance: If the insurance doesn't pay, you don't pay.

16. That assurance was not incidental. It was the deal.

17. Legacy knew exactly what it was selling—high-cost human tissue and skin graft products that live or die on reimbursement.

18. Legacy also knew something else: reimbursement for these products is uncertain, frequently denied, and heavily regulated.

19. Yet Legacy did not present that risk honestly.

20. Instead, Legacy told Counter-Plaintiff that:

- The products were reimbursable;

- The model worked;

- And most importantly, the financial risk would not fall on the provider.

21. That representation removed the only barrier to adoption.

22. Counter-Plaintiff relied on that promise and moved forward—using the products in patient care and submitting claims.

23. Then the truth emerged: reimbursement did not come.

24.     And when it didn't, Legacy did exactly what it promised it would not do: It shifted the entire financial burden onto the provider.

25.     This lawsuit is the final step in that reversal.

26.     Legacy now seeks to enforce a version of the deal that it never sold—and that Counter-Plaintiff never agreed to.

27.     The law does not permit a party to induce a transaction with one set of promises and then enforce a different one after the fact.

## COUNT I—FRAUDULENT INDUCEMENT

28.     Counter-Plaintiff incorporates the foregoing paragraphs.

29.     Legacy made specific, material representations that:

- The products were reimbursable;

- Counter-Plaintiff would not be financially responsible absent reimbursement;

- Use of the products would not result in out-of-pocket loss.

30.     These representations were false.

31.     Legacy knew they were false, or at least made them with reckless disregard for the truth, because:

- It operated in the reimbursement-dependent medical product market;

- It knew reimbursement was uncertain and frequently denied;

- It knew providers were exposed to non-payment risk.

32.     Legacy made these statements to induce adoption and increase product utilization.

33.     Counter-Plaintiff relied on those representations, and that reliance was reasonable.

34.    Without those assurances, Counter-Plaintiff would not have entered into the transaction.

35.    Legacy's conduct caused substantial financial harm, including exposure to significant unpaid invoices and loss of expected reimbursement.

36.    Legacy cannot now enforce a contract built on misrepresentation.

37.    Counter-Plaintiff seeks all damages allowed by law, including exemplary damages.

### COUNT II—NEGLIGENT MISREPRESENTATION

38.    Counter-Plaintiff incorporates the foregoing paragraphs.

39.    In the alternative, Legacy supplied false information in the course of its business regarding reimbursement and financial risk.

40.    Legacy failed to exercise reasonable care in communicating that information.

41.    Legacy had a financial interest in securing reliance—and achieved exactly that.

42.    Counter-Plaintiff relied on the information, and that reliance resulted in economic loss.

43.    At a minimum, Legacy is responsible for the foreseeable consequences of the information it provided.

### COUNT III—BREACH OF CONTRACT

44.    Counter-Plaintiff incorporates the foregoing paragraphs.

45.    The parties' agreement—whether expressed in writing, oral representations, or course of dealing—was grounded in a reimbursement-dependent model.

46.    That model was not incidental. It was essential.

47.    Legacy breached the agreement by:

- Providing products that were not reimbursable as represented;

- Failing to honor the agreed allocation of financial risk;

- Attempting to impose liability where reimbursement failed.

48. The essential purpose of the agreement failed.

49. A contract that depends on reimbursement cannot be enforced as if reimbursement never mattered.

50. Counter-Plaintiff suffered damages as a result.

## COUNT IV—PRINCIPAL-AGENCY LIABILITY/APPARENT AUTHORITY/RATIFICATION

51. Counter-Plaintiff incorporates the foregoing paragraphs.

52. Plaintiff employed and paid Veriquest Medical Inc. and Tom and Steve Howhannesian to market services related to Plaintiff's skin graft product.

53. Counter-Plaintiff did not pay Veriquest Medical Inc. or Tom or Steve Howhannesian directly.

54. Veriquest Medical Inc. and Tom and Steve Howhannesian represented they were agents of Plaintiff and assisted Counter-Plaintiff with education about the graft product, ordering the graft product, and the application of the graft product.

55. Plaintiff knowingly and intentionally allowed Veriquest and Tom and Steve Howhannesian to act on its behalf regarding sales of the skin graft product.

56. Plaintiff ratified Veriquest, Tom Howannesian, and Steve Howhannesian's actions by accepting orders from them and paying them for their services.

57. By doing so, Plaintiff ratified the agent's actions and gave them apparent authority, if not granting them actual authority.

58.    Plaintiff is liable for the actions and statements of its agents, Veriquest Medical Inc. and Tom and Steve Howhannesian.

59.    Counter-Plaintiff suffered damages as a result of its reliance on the actions and statements of Plaintiff's agents.

## COUNT V—DECLARATORY JUDGMENT

60.    Counter-Plaintiff incorporates the foregoing paragraphs.

61.    A real and immediate controversy exists regarding whether any payment is owed.

62.    Counter-Plaintiff seeks a declaration that: No reimbursement means no obligation.

63.    Specifically, Counter-Plaintiff seeks a declaration that:

- Payment was contingent upon reimbursement;

- Legacy bears the risk of non-reimbursement;

- The claimed invoices are not due.

## COUNT VI—ALTERNATIVELY, UNJUST ENRICHMENT

64.    Counter-Plaintiff incorporates the foregoing paragraphs.

65.    Legacy seeks payment for products that generated no revenue and delivered no economic benefit.

66.    Equity does not permit a supplier to profit from a failed model it created.

67.    Allowing recovery here would reward the very conduct at issue—selling risk as certainty and then collecting when the risk materializes.

## COUNT VII—DECEPTIVE AND MISLEADING BUSINESS PRACTICES

68.    Counter-Plaintiff incorporates the foregoing paragraphs.

69.    Legacy engaged in false, misleading, and deceptive conduct by misrepresenting:

- The nature and viability of its products;

- The likelihood of reimbursement;

- The allocation of financial risk.

70. These misrepresentations were not technical—they were central.

71. They were the reason the transaction occurred.

72. And they were the reason Counter-Plaintiff was harmed.

### COUNT VIII—RECOUPMENT AND SETOFF

73. Counter-Plaintiff incorporates the foregoing paragraphs.

74. If Legacy is entitled to any recovery—which is denied—such recovery must be reduced by:

- Returned products;

- Denied claims;

- Non-billable inventory;

- All applicable credits.

### IV.    DAMAGES

75. Counter-Plaintiff incorporates all preceding paragraphs.

76. As a direct and proximate result of Legacy's wrongful conduct, Counter-Plaintiff has sustained and will continue to sustain substantial damages.

### A.    ECONOMIC DAMAGES

77. Counter-Plaintiff has suffered actual economic damages, including:

a. Exposure to substantial unpaid invoices asserted by Legacy;

b. Loss of expected reimbursement revenue for claims submitted in reliance on Legacy's representations;

c. Costs associated with billing, claims submission, and reimbursement efforts;

d. Administrative and operational expenses incurred in responding to denials and disputes;

e. Loss of time and resources devoted to implementing and unwinding Legacy's product program.

## B.    BENEFIT-OF-THE-BARGAIN

78.    Legacy sold a model, not just a product.

79.    The model promised that: Use of the products would be reimbursed and would not create out-of-pocket loss.

80.    Counter-Plaintiff did not receive that benefit.

81.    Counter-Plaintiff is entitled to recover the value of the bargain that was promised but not delivered.

## C.    OUT-OF-POCKET DAMAGES

82.    Alternatively, Counter-Plaintiff is entitled to recover all losses incurred as a result of entering into the transaction, including financial exposure and costs arising from non-reimbursement.

## D.    CONSEQUENTIAL DAMAGES

83.    Legacy's conduct foreseeably caused additional damages, including:

a. Disruption to Counter-Plaintiff's medical practice;

b. Diversion of resources from patient care to administrative remediation;

c. Increased compliance, audit, and documentation burdens;

d. Reputational and operational strain associated with disputed claims.

## E.    EQUITABLE DAMAGES / OFFSET

84.    To the extent Legacy seeks recovery, Counter-Plaintiff is entitled to:

- Full recoupment and setoff;

- Credits for returned or unusable products;

- Reduction for all denied or non-reimbursed claims.

85. Equity requires that Legacy not recover for products that failed to generate reimbursement under the very model it promoted.

## F.    EXEMPLARY DAMAGES

86. Legacy's conduct involved fraud, malice, or gross negligence.

87. Legacy knowingly induced Counter-Plaintiff into a transaction by misrepresenting reimbursement viability and financial risk.

88. Such conduct justifies the imposition of exemplary damages to punish and deter similar conduct.

## G.    ATTORNEYS' FEES AND COSTS

89. Counter-Plaintiff seeks recovery of reasonable and necessary attorneys' fees and costs as permitted by law.

## H.    INTEREST

90. Counter-Plaintiff seeks pre-judgment and post-judgment interest as allowed by law.

## I.    DAMAGES RANGE

91. Counter-Plaintiff seeks: Monetary relief over $1,000,000, including all categories of damages described herein as Legacy promised a reimbursement-driven model with no provider risk. Reimbursement did not occur. The promised model failed. The law does not permit Legacy to convert that failure into a profit at Counter-Plaintiff's expense.

## V.    JURY DEMAND

92.    Defendant demands trial by jury.

## VI.    PRAYER

WHEREFORE, Defendant/Counter-Plaintiff respectfully requests that:

- Plaintiff take nothing and the Court declare that no amounts are owed;

- Judgment be entered in favor of Defendant/Counter-Plaintiff;

- Counter-Plaintiff recover damages, including exemplary damages where

permitted;

- Counter-Plaintiff recover attorneys' fees, costs, and interest;

- Costs and fees;

- All further relief to which Defendant/Counter-Plaintiff is entitled.

Respectfully submitted,

**KENNEDY**
**ATTORNEYS & COUNSELORS AT LAW**

*/s/Mark S. Kennedy*

**Mark S. Kennedy**
State Bar No. 24000122
C. Trey Scott
State Bar No. 24083821
Lurese A. Terrell
State Bar No. 24008139
12222 Merit Drive, Suite 1750
Dallas, Texas 75251
Telephone: (214) 445-0740
Facsimile: (962) 661-9320
markskennedylaw@msn.com

**ATTORNEYS FOR DEFENDANT/COUNTER-**
**PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that a true and correct copy of the foregoing document was served on all counsel of record in this matter when the document was filed with the court through the ECM system, pursuant to the Federal Rules of Civil Procedure.

*/S/ Mark S. Kennedy*

_____

MARK S. KENNEDY